IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA
TUCSON DIVISION

```
FILED ___ LODGED
___ RECEIVED ___ COPY

JUN 13 2025

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY
```

| | |
|---|---|
| THEODORE E. ESSENFELD<br>(petitioner)<br><br>v.<br><br>THE HONORABLE JOHN PHELAN<br>SECRETARY OF THE NAVY<br>(respondent) | Case No. CV-25-293-TUC-JGZ--JR<br><br>Petition under 28 U.S.C. Sect. 2241 for a writ of habeas corpus by a person in federal custody |

EMERGENCY INJUNCTION FOR RELIEF

Theodore E. Essenfeld
Reg. No. 08418-506
Federal Corrections Institution
P.O. Box 9000
Safford, AZ    85548

## I. INTRODUCTION

Petitioner, Theodore E. Essenfeld, a federal prisoner incarcerated at the Federal Corrections Institution (FCI), Safford, AZ is proceeding pro se and in forma pauperis requesting summary judgement on an emergency injuction under 28 U.S.C. Sect. 2241, directing the Secretary of the Navy to hold in abeyance any ongoing or planned punitive or administrative actions against petitioner pending the outcome of petitioner's direct appeal being heard by the NINTH Circuit Court of Appeals (Case No. 24-06737).

## II. JURISDICTION

Jurisdiction of the court is invoked pursuant to 28 U.S.C. Sect. 2241 in that this action seeks to redress the deprivation, under cover of Secretary of the Navy Instructions (SECNAVINST), of rights secured by the United States Constitution and/or by acts of the United States Congress.

## III. PARTIES

Captain Theodore E. Essenfeld, USN (petitioner)

The Honorable John Phelan, Secretary of the Navy (respondent)

## IV. EXHAUSTION OF AVAILABLE REMEDIES

A. Petitioner exhausted his administrative remedies before filing the complaint.

1. Petitioner requested that proceedings against him be held in abeyance via a memorandum addressed to Commander, Navy Personnel Command (PERS 834) and routed via his chain of command, dated November 29, 2024 (Enclosure 1). He received no response from Pers 834.

2. Petitioner wrote directly to the President of the United States, The Vice President of the United States, the

Secretary of Defense, and the Secretary of the Navy asking for their intervention to hold in abeyance any Navy punitive and/or administrative actions proceeding against petitioner until his appeal before the NINTH Circuit is adjudicated. Unfortunately, petitioner does not have copies of these letters. Petitioner was deprived of all of his legal documents and correspondence when he was transferred from CCA Otay Mesa, CA in March, 2025. He received no response to those four letters.

3. On or about April 24, 2025, petitioner received NOTIFICATION OF ADMINISTRATIVE SHOW CAUSE PROCEEDINGS, dated April 17, 2025 (Enclosure 2). Petitioner responded in a timely manner on April 28, 2025 with his ACKNOWLEDGMENT OF RIGHTS (Enclosure 3) and another memorandum addressed to the Secretary of the Navy for routing via his chain of command, again asking that these proceedings be held in abeyance until his appeal before the NINTH Circuit is adjudicated. This REQUEST FOR EXCEPTION TO POLICY (Enclosure 4) has, to date, received no response.

B. There remains no other administrative remedy available to petitioner. Consequently, he asks the court to proceed with his petition in order to resolve the matter, granting an emergency injunction to stay the Navy's proceedings against him until the NINTH Circuit either affirms his conviction or remands his case back to the District Court for a new trial or dismisses his conviction entirely.

V. FACTUAL STATEMENT

A. Petitioner was placed in pre-trial confinement on May 17, 2024 while serving on active duty in the United States Navy.

He was immediately placed in a leave status and remained therein until exhaustion of his earned leave on July 26, 2024.

B. Upon exhaustion of his earned leave petitioner was classified as being absent without authorization and placed in a "lost time" status. This means he remains on active duty without pay, benefits, or accrual of time in grade or time in service. He remains in a lost time status to date.

C. On November 22, 2024, petitioner was provided a copy of FINAL CIVIL ACTION REPORT ICO CAPT THEODORE E. ESSENFELD, USN, dated November 12, 2024 (Enclosure 5).

D. Petitioner submitted his timely response (Enclosure 1) on November 29, 2024. This was the last communication he had with any Navy official or representative until receiving Enclosure 2 nearly five months later. In his responses to both Enclosures 2 and 5, petitioner requested that any and all administrative and/or punitive proceedings against him be held in abeyance until such time as his appeal is adjudicated by the NINTH Circuit.

E. In addition to Enclosure 2, petitioner received on or about April 24, 2025, a copy of a memorandum from Commander, Navy Personnel Command (PERS 83) addressed to Commander, Navy Region Southwest directing the latter to convene a Board of Inquiry (Enclosure 6). Such Board is to complete its deliberation within sixty days of receipt of Enclosure 6, which would be on or about June 17, 2025. The Board has the authority to separate petitioner from naval service with an other-than-honorable discharge, which will adversely affect his earned veteran's benefits to include loss of some or all of same, to include military pension, medical benefits, education benefits, home loans, and others.

F. Also with Enclosure 2, petitioner received Enclosure 7,

a memorandum from Commander, Expeditionary Strike Group THREE, objecting to petitioner's request to hold these proceedings in abeyance.

G. As stated above, petitioner once again requested that the Secretary of the Navy hold in abeyance these proceedings via his chain of command (Enclosure 4).

VI. INJUNCTION RELIEF

A. When determining if a petitioner is entitled to injunctive relief, the court considers the following:

1. The likelihood of success of the petitioner; and

2. The threat of irreparable harm to the petitioner; and

3. The balance between the threat of harm and the injury that granting the injunctive relief would inflict on other interested parties; and

4. Whether it is in the public's best interest.

B. The facts and record show that petitioner is likely to succeed on the merits of his case.

1. The Navy is incorrectly proceeding on the basis of a "final" civil action report. This is plain error. A fundamental principle of jurisprudence is that a criminal conviction is not final until resolution of the defendant's appeal as a matter of right. See United States v. Rich (9th Cir., 10/5/2009), United States v. Robertson (9th Cir., 9/2/2020) (Quoting United States v. Logan (11th Cir., 3/6/1997)). See also United States v. Rorie (U.S. Court of Appeals for the Armed Forces, 7/1/2003).

2. Petitioner has a direct appeal pending before the NINTH Circuit (Case No. 24-06737). Until that appeal is adjudicated and his conviction is affirmed, his conviction in the incident case is not final.

3. In LOPER BRIGHT ENTERPRISES v RAIMONDO (S. Ct., 2024) the Supreme Court held that the Administrative Procedure ACT (APA) requires the courts to exercise their independent judgment in deciding whether a government department or agency - such as the Department of the Navy - has acted within its statutory authority, and courts MAY NOT defer to a department or agency interpretation of the law simply because it may be ambiguous. As Chief Justice Roberts wrote in the majority opinion, "Agencies have no special competence in resolving statutory ambiguities. Courts do." Petitioner asserts that there is NOTHING ambiguous about the Sixth Amendment to the United States Constitution and his right to due process.

4. 18 U.S.C. Sect. 3732, TAKING OF APPEAL; Notice, Time - (Rule), Federal Rule of Criminal Procedure, Rule 37(a), TAKING APPEAL; Notice, Contents, Signing, time, and U.S.C.S. Court Rules of Appellate Procedure, Rules 3 & 4 are unambiguous. Proceeding with administrative and/or punitive actions against petitioner based on an erroneous determination of the finality of his conviction is a violation of petitioner's due process rights under the United States Constitution - which all interested parties have sworn to support and defend - as well as a violation of the law as written by Congress. Furthermore, such action defies judicial jurisprudence. Petitioner believes that neither his "misconduct" nor his "substandard performance of duty" - which is predicated upon his not-yet-final conviction - will not survive any level of scrutiny upon the success of his appeal.

5. In Fields v. Wharrlie (7th Cir., 2/28/2012) the court stated, "...a defendant's conviction is not final as a matter of law until he exhausts the direct appeals afforded to him, and,

until that exhaustion, he is entitled to the full breadth of due process available. See GONZALEZ v THALER (S. Ct., 2012) (Holding that '[f]or petitioners who pursue direct review all the way to [the Supreme Court], the judgement becomes final at the conclusion of direct review - when the court affirms a conviction on the merits or denies a petition for certiorari [and that] [f]or all other petitioners, the judgement becomes final at the expiration of the time for seeking such review - when the time for pursuing direct review in this court, or in the state court, expires.'); SKINNER v. SWITZER (S. Ct., 2011)"

  6. The NINTH Circuit has consistently ruled with the Supreme Court's decisions in mind. "[petitioner's] second appeal is still pending; therefore, his conviction is not final." (GAMBLE v. KERNAN, 9th Cir., 3/30/2006); "Because movant's appeal of his conviction and sentence is currently pending in the NINTH Circuit, his judgement of conviction is not final..." (UNITED STATES v. VAZQUEZ-IBARRA, 9th Cir., 10/2/2006); "... because the process of review includes the right to petition the United States Supreme Court for a writ of certiorari, the NINTH Circuit has held that a conviction is not final until the 90-day period for filing the writ of certiorari has expired, even if the the petition for certiorari is not filed. See BOWEN v. ROE (9th Cir., 1999)" (JOHNSON v. WENGLER, 9th Cir., 9/26, 2012); "Because petitioner's direct appeal is pending, his judgement of conviction is not 'final'..." (HEADRICK v. STRANGE, 9th Cir., 10/13/2021); "Because his appeal of the criminal conviction and sentence is pending before the NINTH Circuit, Johnson's conviction is not final." (JOHNSON v. UNITED STATES, 9th Cir., 3/11/2022); "Petitioner's judgement of conviction is not final as

his direct appeal is currently pending..." (BURKHARDT v MADDEN, 9th Cir., 10/11/2022). Petitioner brings the same argument in the incident case. His direct appeal is still pending before the NINTH Circuit, therefore his conviction is not final. Consequently, the grounds for the Navy's administrative and/or punitive action against petitioner are premature if not entirely baseless.

C. Petitioner will suffer irreparable harm if the Navy's proceedings continue absent an affirmation of his conviction by the NINTH Circuit and, possibly, the Supreme Court.

1. Petitioner enlisted in the United States Navy in 1990 and served nearly 34 years as an enlisted Sailor and Officer. His service has been exemplary and his record was unblemished prior to these proceedings. Petitioner rose through the enlisted ranks where his honor, courage, committment, leadership, and accomplishments were rewarded with a Naval R.O.T.C. scholarship to attend the Rensselaer Polytechnic Institute. He twice received honorable discharges; once when re-enlisting and again when discharged "at the convenience of the government" to accept his appointment as a Midshipman.

2. Petitioner's record of excellence continued as he graduated from college early and returned to active duty as an Ensign in the Naval Reserve (AD). He was honorably discharged a third time when he accepted transfer to the "regular" component of the Navy without interruption to his service.

3. Petitioner continued to distinguish himself through his service over the ensuing years. He frequently ranked first among peers on annual fitness reports, and was always among the top of such rankings. He was selected for and excelled in Nearly

command" as a Lieutenant, the first Surface Warfare Officer to "fleet up" from Executive Officer to Commanding Officer, where he promoted to Lieutenant Commander early, and earned the first of three Meritorious Service Medals. He attended the Naval War College, earning a Master's Degree while simultaneously attending the Maritime Advanced Warfighting School. Petitioner served as a Legislative Fellow on the staff of Senator Roger Wicker (R - MS) during the 111th Congress. He was the Surface Warfare Community's nominee to be Naval Aide to President Obama in 2011. Petitioner attended the Defense language Institute then served as an Exchange Officer with the Netherlands Maritime Battle Staff, deploying twice to Africa and once to the Arctic. Petitioner led over 800 Sailors and Marines in training for and deploying to the western Pacific and the Middle East during his second command-at-sea, for which he was awarded a second Meritorious Service Medal. As a Commander, petitioner filled a Captain's billet serving as Assistant Chief of Staff for Amphibious Ship Readiness (N46) to the Commander, Naval Surface Forces, Pacific Fleet, earning a third Meritorious Service Medal and selection for promotion to Captain. He most recently served as the Experimentation Branch Head - a position he was the first to hold in a branch which he established - at U.S. Northern Command / North American Aerospace Defense Command where he also served as the Crisis Management Team Lead in the Contingency Command Center at Cheyenne Mountain, Colorado. For his exceptional service there, petitioner was awarded the Defense Superior Service Medal, the second-highest award for military service outside of combat. Petitioner was 10 days from assuming his third command of a warship, a nearly unheard of achievement, when the charges against him derailed not only his

career, but every aspect of his life. However, even after such upheaval, petitioner continued to perform his duties with dignity and professionalism, working on high profile projects in support of Chief of Naval Operations and Commandant of the Marine Corps initiatives, as well as participating in exercise and operational planning until his incarceration. Petitioner's performance of his duties to his country or the Navy never diminished.

    4. Petitioner faces the prospect of losing some or all of his earned veteran's benefits if the Navy continues these proceedings before a final adjudication of his appeal. It would be a profound injustice to deny him these earned benefits he could have begun collecting more than a decade ago, when he could have retired, only to have his conviction overturned AFTER receiving an other-than-honorable discharge. The financial loss alone amounts to millions of dollars over the remainder of his life. Petitioner deserves better than this from the country he has served his entire adult life.

    D. There is no harm to any other interested party by holding in abeyance the Board of Inquiry and any other administrative or punitive actions against petitioner. Petitioner has not been charged with any violation of the Uniform Code of Military Justice. If his appeal succeeds, the grounds for the proceedings against him are moot. Furthermore, petitioner is serving in a lost time status. He is receiving neither pay nor benefits, nor is he accruing time in grade or time in service. At the time of his incarceration, petitioner was serving in an "excess billet" at Expeditionary Strike Group THREE in San Diego, CA. Holding in abeyance these proceedings costs nothing to the United States Navy or the American taxpayer. But it does allow petitioner to

pursue justice in accordance with the laws established by Congress and the rights enshrined within the Constitution, to whose support and defense he has devoted his entire adult life.

E. Finally, it is always in the public interest for government officials, agencies, departments, and employees to obey the Constitution and the laws passed by Congress. Just as petitioner is being held to account for (supposedly) violating federal statutes, so too should Navy leaders be held accountable for violating 18 U.S.C. Sect. 3732, Federal Rules of Criminal Procedure, U.S.C.S. Court Rules of Appellate Procedure, and the rights enshrined in the United States Constitution.

F. Petitioner has filed another 2241 petition with this court (Case No. not yet assigned) seeking immediate transfer to pre-release custody or supervised release in San Diego, CA. Assuming that petition is granted on its merits, and he can return to San Diego before his conviction is affirmed, and before the Navy acts to administratively separate him from the service, petitioner is obligated to return to duty and strongly desires to do so pending the outcome of his appeal. If his conviction is ultimately affirmed, petitioner will accept whatever outcome a Navy Board of Inquiry directs in accordance with his rights and duties.

VII. RELIEF REQUESTED

A. WHEREFORE, petitioner requests that the court grant the following relief:

1. Declare that the Navy's proceeding with the planned Board of Inquiry and any other punitive or administrative actions absent a FINAL conviction violates petitioner's Constitutional right to due process.

2. Order respondent to hold in abeyance any and all administrative and/or punitive actions against petitioner pending a final affirmation of his conviction. This includes the planned Board of Inquiry tentatively scheduled no later than June 17, 2025. (NOTE: Petitioner has been advised that, due to lack of availability of Navy Defense Counsel and the Admirals required to convene the Board of Inquiry, it will likely not convene until August, 2025. No formal notification of convening has been received by petitioner to date.)

3. Order respondent to allow petitioner to return to duty upon his return to San Diego, CA, to receive all pay, allowances, entitlements, and benefits, so long as petitioner's return preceeds a final affirmation of his conviction.

4. Order respondent, upon petitioner's return to duty and upon successful appeal of petitioner's conviction, to restore petitioner's command qualification, other professional qualifications, security clearance(s), and other authorities to which he is entitled by rank, position, and experience. This should also include petitioner's lost Major Command opportunity and continued opportunities for promotion and career advancement.

5. Grant petitioner leave to seek restitution for damages at some later date.

6. Grant petitioner such other relief as the court deems he is entitled.

VIII. DECLARATION

Pursuant to 28 U.S.C. 1746, I declare under penalty of perjury that the above is true and correct to the best of my knowledge.

Theodore E. Essenfeld      6/8/2025